```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   FORT SMITH DIVISION


GLEN K. JENSEN                                      PLAINTIFF


     v.              Case No. 08-2016


GARY WILLIAMS, DISTRICT RANGER,
BOSTON MOUNTAIN RANGER DISTRICT;
AND THE U.S. FOREST SERVICE,
UNITED STATES DEPARTMENT OF
AGRICULTURE
                                                   DEFENDANTS
```

## MEMORANDUM OPINION

Before the Court are Plaintiff's and Defendants' Cross Motions for Summary Judgment (Docs. 10, 12) and the replies and responses (Docs. 14, 17, 18). Also before the Court is Defendants' Motion to Strike (Doc. 23). Plaintiff challenges the Finding of No Significant Impact ("FONSI") signed by Gary Williams as District Ranger of the U.S. Forest Service's Boston Mountain Ranger District. The FONSI was based on an Environmental Assessment ("EA") prepared by the Forest Service for the Buckhorn OHV ("Off-Highway Vehicle") Trail Project. Plaintiff Glen K. Jensen asks that the Court declare the FONSI null and void and stop implementation of the Buckhorn OHV Trail Project pending preparation of additional environmental documentation as required by the National Environmental Policy Act ("NEPA"). For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED,** Plaintiff's Motion for

**AO72A**
**(Rev. 8/82)**

Summary Judgment is **DENIED**, and Defendants' Motion to Strike is **DENIED AS MOOT**.

**A. Background**

In June 2005, the U.S. Forest Service noticed the public and certain landowners of its proposal to reconfigure OHV trail usage in the Lee Creek Unit of the Ozark National Forest. Based on the comments, the Forest Service created a new alternative it considered in the first EA. The Forest Service's proposal called for re-designation of some trails, de-commissioning other trails, building some new trails, and building three new trail-heads. On October 21, 2005, the new alternative was selected and two individuals appealed the decision. Based on new information, the decision was withdrawn pending analysis of the new information. The Forest Service revised the alternative previously selected, and issued a revised EA. On November 14, 2006 the Forest Service made another decision to select the same alternative, and one appeal was submitted. The Forest Service Appeal Deciding Officer issued a withdrawal of the decision based on a technical error in the EA. A Fourth EA was issued with further modifications to the chosen alternative in March 2007.

On May 15, 2007, the District Ranger Gary E. Williams issued the Decision Notice and Finding of No Significant Impact for the Buckhorn OHV Trail Project. On June 26, 2007, Plaintiff

Glen Jensen, who owns property adjacent to the Lee Creek Unit of the Ozark National Forest, appealed the Decision Notice and FONSI. On August 27, 2007, the appeal deciding officer accepted the recommendation of the appeal reviewing officer and denied Jensen's appeal. This decision constituted the final administrative determination of the United States Department of Agriculture.

## B. Standard of Review

Summary Judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). No party has objected to the administrative record filed with the Court (Doc. 7), and the Court accepts its contents as true for the purposes of this case.

For a court to set aside an administrative decision, it must do so "only for substantial procedural or substantive reasons as mandated by statute...not simply because the court is unhappy with the result reached." *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978). Because NEPA does not provide for a private right of action, the standard of review of the agency decision is the Administrative Procedure Act's arbitrary and capricious standard for agency action. For the court to find the Forest Service's decision arbitrary and capricious, the explanation for the

decision either must run counter to the evidence before the agency, or be so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Friends of Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115, 1121 (8th Cir. 1999). "The role of the courts is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious." *Baltimore Gas and Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983).

**C. Discussion**

NEPA requires all agencies of the Federal Government to "include in every recommendation or report on...major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on the environmental impact of the proposed action." 42 U.S.C. § 4332(2)(C)(I). Relevant to this case is the Forest Service's determination that the Buckhorn OHV project will not significantly affect the quality of the human environment. In determining the significance of the effect on the human, environment, ten factors must be considered. 40 C.F.R. § 1508.27. Four of these factors are relevant to this case:

> (1) Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.
>
> (3) Unique characteristics of the geographic area such

> as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.
>
> (5) The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks.
>
> (7) Whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts.

*Id.*

If agency regulations do not categorically require preparation of an environmental impact statement, agencies prepare an EA to gauge the amount of environmental impact and thus the need to prepare an environmental impact statement. *Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 954 (9th Cir. 2008). Based on the EA, the agency either issues a FONSI or prepares an environmental impact statement. *Id.* The EA is the tool utilized to determine if the project may significantly affect the quality of the human environment. If so, an environmental impact statement must be prepared; if not, the agency issues a FONSI and no further environmental study is necessary for that particular project.

In this case, if the Court affirms the Forest Service's FONSI, then the Forest Service has complied with NEPA. The Court

AO72A
(Rev. 8/82)

"must affirm if we find the Service took a 'hard look' at the project, identified the relevant areas of environmental concern, and made a convincing statement for its FONSI." *Newton County Wildlife Ass'n v. Rogers*, 141 F.3d 803, 809 (8th Cir. 1998) (citing *Sierra Club v. U.S. Forest Service*, 46 F.3d 835, 838-39 (8th Cir. 1995)).

Jensen alleges six errors in the EA in support of his contention that the FONSI is arbitrary and capricious. The Court will address each alleged failure of the EA in turn.

### 1.  **Adequacy of the EA's Examination of the Direct and Indirect Effects**.

Jensen first claims that the EA did not adequately consider the direct and indirect environmental effects. Direct effects "are caused by the action and occur at the same time and place." 40 C.F.R. § 1508.8(a). Indirect effects are "caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable." 40 C.F.R. § 1508.8(b). Growth inducing effects and other effects related to induced changes in the pattern of land use, population density or growth rate, and related effects on air and water and other natural systems, including ecosystems are all examples of indirect effects. *Id.*

Most of the EA is concerned with analysis of the direct and indirect effects of the alternatives under consideration. AR 000088-000121. Jensen claims that the agency did not consider the effects on the Lee Creek Unit, the fish, birds, reptiles,

amphibians, and other wildlife; on the lands surrounding the Project area; and on the human population in the area, including the plaintiff. However, Jensen does not specify or even speculate on what these unconsidered effects are.

Jensen also argues, as evidence of unconsidered effects, that OHV users will not respect the laws or trail restrictions. Even if so, that is no different from the status quo, where OHV recreation is widespread and unmanaged. Jensen does not argue or present any evidence that OHV traffic will increase or become more noxious, and we have no reason to believe that it will. Merely pointing out the possibility of unconsidered effects does not even rise to the level of speculation, and does not indicate that the Forest Service's actions were arbitrary and capricious.

### 2. Sufficiency of Documentation in Support of the Conclusion that the Impacts are Not Significant.

Jensen claims that the EA included insufficient documentation to support its FONSI. However, Jensen only specifies one instance of insufficient documentation. He claims that the Forest Service needs documentation to support the premise that road reconstruction leads to greater short-term erosion, but less long-term erosion than taking no action. We find nothing in that statement that requires technical documentation.

### 3. Cumulative Impacts

Jensen claims that the EA failed to consider cumulative

Page 7 of 12

**AO72A**
**(Rev. 8/82)**

impacts. NEPA requires consideration of the cumulative effects of several proposed actions that are pending at the same time. "An [EA] will be ruled deficient only if it does not include a cumulative impact analysis or is not tiered to an EIS [Environmental Impact Statement] that contains such an analysis." *Ark. Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 431 F.3d 1096, 1101 (8th Cir. 2005). "[W]hen several proposals...that will have cumulative or synergistic environmental impact upon a region are pending concurrently before an agency, their environmental consequences must be considered together." *Kleppe v. Sierra Club*, 427 U.S. 390, 410 (1976).

The subsections of the EA that discuss the environmental effects of the various alternatives each contain a subsection that discusses cumulative effects. *See* AR 000088-000121. Jensen contends that this discussion is inadequate. However, Jensen makes no suggestion as to what other actions could cause cumulative effects, contending only that the Forest Service inadequately researched the possibility of other proposals. Lacking even speculation as to what other actions could cause cumulative impacts, the Court does not believe that the Forest Service has a duty to discuss cumulative impacts of un-named hypothetical actions. Finally, the Court notes that the EA is tiered to the Final Environmental Impact Statement for the

Page 8 of 12

Revised Land and Resource Management plan for the Ozark-St. Francis National Forests, which is part of the administrative record at AR00243-00816. The Forest Service's consideration of cumulative impacts is therefore not arbitrary and capricious.

### 4. The EA's Consideration of the Enforcement of Rules and Regulations Governing OHV Use

Jensen claims that the EA's failure to consider enforcement of rules renders the FONSI arbitrary and capricious. Jensen relies heavily on the unpublished case *Sierra Club v. United States Dep't of Agric.*, 116 F.3d 1482 (7th Cir. 1997) to support his contention that the EA's treatment of enforcement is insufficient. We agree with the Defendants that this case is distinguishable. The key difference is that in *Sierra Club v. USDA*, the area in question was to be opened to OHV use where none was present before, and in this case OHVs are currently allowed in the Lee Creek unit and will continue to be after the project is implemented.  Neither side has suggested that OHV ridership will increase or that the proposed improvements will make OHV users less law-abiding than they currently are. The Court therefore has no information as to what environmental consequences could result from the proposed action itself. Although riders may not obey the laws, there is no indication that the proposed plan would make them more numerous, more unlawful, or more likely to cause damage and to impact the environment.

Jensen also argues that Executive Order 11644 creates a duty on the part of the government that restrictions relating to OHV use must be enforceable. The Executive Order requires the agency head to monitor OHV use and take appropriate action. We agree with the District Court for the District of Columbia that this language does not create a duty that can be enforced in a civil suit. *See Friends of the Earth v. U.S. Dept. of Interior*, 478 F.Supp.2d 11, 27-28 (D.D.C. 2007).

### 5. The Adequacy of Mitigation Measures

In support of his contention that the FONSI is arbitrary and capricious, Jensen cites to provisions of the Code of Federal Regulations concerning the need for a discussion of mitigation measures in an Environmental Impact Statement. The NEPA regulations do not require a discussion of mitigation measures in an environmental assessment. *Akiak Native Cmty. v. U.S. Postal Serv.*, 213 F.3d 1140, 1147 (9th Cir. 2000). An EA that properly supports a FONSI need only include a discussion of mitigation measures when there would be a significant chance of a significant impact in the absence of the mitigation measures. *See Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1015 (9th Cir. 2006). In other words, an EA need only discuss mitigation measures when such measures are material to a FONSI. Since the Forest Service's FONSI is not based on mitigation measures, the Forest Service is not required to discuss them.

The Forest Service's consideration of mitigation measures is therefore not arbitrary and capricious.

### 6. Adequacy of Monitoring

Jensen claims that CEQ regulations and Executive Order 11644 require a valid FONSI and EA to provide for a specific monitoring program that will detect and measure potentially adverse consequences of implementation on local people and wildlife. Jensen claims that monitoring described in the EA at AR 000086-000087 is inadequate to meet the requirement.

The regulation in question, 40 C.F.R. § 1505.3, states that "agencies *may* provide for monitoring." (emphasis added). Such language is permissive and does not create a legal requirement for monitoring. Section 8(a) of Executive Order 11644 states that "[t]he respective agency head shall monitor the effects of the use of off-road vehicles on lands under their jurisdictions." The degree of monitoring assumed in the EA does not render it arbitrary and capricious.

## D. Conclusion

Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiff's Motion for Summary Judgment is **DENIED** and his Complaint is **DISMISSED WITH PREJUDICE**. Defendants' Motion to Strike is **DENIED as MOOT**.

IT IS SO ORDERED this 27th day of April, 2009.

/s/ Robert T. Dawson

AO72A
(Rev. 8/82)

```
                                    Robert T. Dawson
                                    United States District Judge
```